UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MIRACLE HURSTON, | : | CASE NO. 1:07-cv-00449 |
| Plaintiff, | : | JUDGE BARRETT |
| -vs- | : | |
| THE CITY OF SPRINGBORO, OH, et al., | : | |
| Defendants. | : | |

_____

**MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF DEFENDANTS**
_____

Come now Defendants, the City of Springboro, Ohio and Officer Terry Dunkel, who, pursuant to Fed. R. Civ. P. 56, respectfully move this Court for summary judgment in their favor as there is no genuine issue as to any material fact and said moving parties are entitled to judgment as a matter of law. This Motion is supported by the attached Memorandum, excerpts of Plaintiff, Miracle Hurston's deposition, the Affidavit of Lt. Jonathan Wheeler and the Affidavit of Officer Terry Dunkel.

Respectfully submitted,

/s/     Wilson G. Weisenfelder, Jr.
Wilson G. Weisenfelder, Jr. (0030179)
RENDIGS, FRY, KIELY & DENNIS, L.L.P.
One West Fourth Street, Suite 900
Cincinnati, OH  45202-3688
(513) 381-9292
(513) 381-9206 - Facsimile
E-mail:  wgw@rendigs.com
Trial Attorney for Defendants

**MEMORANDUM**

I. **INTRODUCTION**

Plaintiff, Miracle Hurston ("Hurston") has asserted four Causes of Action against the Defendants.  These claims stem from two traffic stops of Hurston by Springboro Police Officer, Terry Dunkel ("Dunkel").  Hurston alleges other stops by Springboro officers though was unable to identify with particularity any other stops and never sought leave of Court to amend his Complaint to name additional officers and/or additional traffic stops.

Hurston asserts he has brought this action for violation of his civil and constitutional rights under 42 U.S.C. §1983.  In his jurisdictional statement he also claims the Court has jurisdiction over state law claims pursuant to 28 U.S.C. §1367.  However, under each of the causes of action, Hurston has not alleged a state law claim.  Instead, he claims entitlement to judgment pursuant to 42 U.S.C. §1983.

Hurston claims in his First Cause of Action a violation of his Fourth and Fourteenth Amendments made actionable by 42 U.S.C. §1983.  Hurston asserts no reasonable suspicion or probable cause existed to detain or cite him.

Hurston's Second Cause of Action is for malicious prosecution which he asserts is made actionable by 42 U.S.C. §1983.

Hurston's Third Cause of Action is against Defendant, the City of Springboro ("Springboro") for an alleged failure to instruct, supervise control and/or discipline its officers.

Finally, Hurston maintains that as a result of the Defendants' conduct, his substantive due process rights have been violated and seeks recovery pursuant to 42 U.S.C. §1983.

However, as the following Memorandum makes abundantly clear, Hurston's claims against these Defendants cannot be sustained and each is entitled to judgment as a matter of law.

## II. STATEMENT OF THE CASE

Miracle Hurston was born in 1980 and resides in Middletown, Ohio with his mother. His daughter lives with him on a part-time basis. (M. Hurston Depo. Pp. 5, 6)

Hurston, though having named Officer Dunkel as a Defendant, possesses little or no information concerning the instances in which he was stopped and cited in Springboro, Ohio by Officer Dunkel. In fact, Hurston does not know how many citations were issued to him by Dunkel and cannot recall ever having a conversation with Officer Dunkel. Further, Hurston cannot recall anything unprofessional about Officer Dunkel. (M. Hurston Depo., P. 33) Hurston cannot recall how long he was stopped by Officer Dunkel and concedes "I can't specifically speak of Officer Dunkel". (M. Hurston Depo., Pp. 33, 34) In

fact, Hurston cannot provide any information about any time he was stopped by Officer Dunkel nor any citation which he was issued. Specifically:

M. Hurston Depo., Pp. 38, 39

Q. -- okay, and I'm here asking you what you know in terms of the allegations that have been asserted in the complaint. I don't want to know what you can review, I want to know what you know today, okay?

A. Okay. About Officer Dunkel?

Q. Well, that's where we're starting right now, okay?

A. Okay.

Q. So you can't tell me how many times he stopped you?

A. No.

Q. You can't tell me how many times he issued a citation?

A. No.

Q. You can't tell me why he issued you a citation?

A. No.

Q. You can't tell me how long you were stopped?

A. No.

Q. Were you ever taken to the police station?

A. No.

Q. Were you ever handcuffed?

A. No.

Q. Were you ever told that you were under arrest?

A. No.

Q. And you can't tell me why Officer Dunkel stopped you?

A. No.

Hurston does recall being stopped three times in Springboro by Springboro officers. He also recalls that each time he was stopped he was in a different automobile. (M. Hurston Depo., P. 44) He was stopped in a black BMW which he claims was his. He was also stopped in a Towne Car owned by his father and in an unidentified Oldsmobile which he cannot identify the make or model. According to Mr. Hurston, each of the cars had a different license plate. (M. Hurston Depo., Pp. 44 - 47)

Notwithstanding Hurston's inability to identify any conduct on the part of Officer Dunkel to substantiate his claims, Officer Dunkel's Affidavit sets forth precisely why Hurston was stopped and ticketed.

The citations issued by Officer Dunkel to Hurston were later dismissed. However, Officer Dunkel was never advised as to why they were dismissed nor was he consulted by the Prosecutor or anyone else concerning what he observed concerning the operation of Hurston's vehicle to establish probable cause for the issuance of the citations. Officer Dunkel's Affidavit makes clear the limited nature of each stop.

### III. ARGUMENT

**A. Officer Dunkel Had Probable Cause To Stop Miracle Hurston On August 27, 2005 And January 12, 2007.**

Dunkel stopped Hurston on two occasions, approximately 1½ years apart. The first stop occurred on August 27, 2005 as Officer Dunkel was proceeding westbound on Central Avenue in Springboro, Ohio. He observed a black BMW traveling in the left lane heading

in the same direction. Dunkel observed the BMW traveling on the center divider line which separates the right from the left lane. He noticed the vehicle's right side tires were on the line for approximately 60 - 80 feet and then drifted back to the left lane and continued on Central Avenue. Officer Dunkel continued to observe the BMW which again drifted towards the left and then drifted to the right which he observed for another 30 - 50 feet. The drifting of the BMW occurred several times and based upon his observations of the BMW, Officer Dunkel activated his emergency lights to stop the BMW. The BMW did not initially stop and Officer Dunkel had to activate his siren to get the driver's attention. He subsequently approached the driver of the car, later identified as Miracle Hurston.

Officer Dunkel cited Hurston for a violation of Springboro Ordinance 432.08 (driving within lanes or continuous lines). The stop occurred at approximately 3:22 a.m. In addition, the stop lasted approximately 7 - 8 minutes. Officer Dunkel observed the traffic violation and also knew from his years of experience there was a greater likelihood of observing someone driving under the influence at that hour of the day. (Dunkel Affidavit)

Officer Dunkel next stopped Mr. Hurston on January 12, 2007. At that time Mr. Hurston was driving a 1988 4-door Oldsmobile. The Hurston vehicle was traveling westbound on Central Avenue and passed the cruiser being operated by Officer Dunkel. When the two vehicles passed, Officer Dunkel observed in his rear-view mirror the Hurston vehicle did not have an operable plate light. Having observed this, Officer Dunkel turned around and began following the Hurston vehicle. Officer Dunkel observed the vehicle drift halfway into the middle lane and then drift back to the left lane. Officer Dunkel activated his overhead lights and stopped the vehicle. Mr. Hurston had a passenger for whom an

outstanding warrant had been issued. The passenger was taken from the scene in another police cruiser based upon the outstanding warrant. (Dunkel Affidavit)

Officer Dunkel cited Hurston for violation of Springboro Ordinance 432.08 (not driving in marked lanes), and Springboro Ordinance 438.04 (license plate light). Officer Dunkel stopped the Hurston vehicle because of the non-functioning license plate light and Hurston drifting between lanes. (Dunkel Affidavit)

While the stops of Hurston occurred nearly a year and a half apart, the analysis as to whether probable cause existed for either stop is the same.

Hurston contends his Fourth Amendment rights were violated by virtue of these stops. However, there is no Fourth Amendment violation if Officer Dunkel's actions are supported by reasonable suspicion to believe Hurston had violated the law. *United States v. Luqman*, ___ F.3d. ___, 2008 WL 926484 (6th Cir.); *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

The Courts have recognized there is no "bright-line" rule to determine whether an officer has reasonable suspicion to make a stop. Rather, the Courts look to the totality of the circumstances surrounding the stop to determine whether the officer had a "particularized and objective basis" for suspecting criminal activity. *United States v. Luqman, supra*. The Courts also give weight to the officer's factual inferences due to the officer's specialized training and experience which permits them to draw inferences from and deductions about the cumulative information available to them that might escape untrained persons. *United States v. Marxen*, 410 F.3d 326, 331-332 (6th Cir. 2005).

Aside from making a determination as to whether the initial basis for an investigatory stop was proper, the inquiry then becomes whether the degree of intrusion was reasonably related in scope to the situation at hand. *Williams v. Leatherwood*, 258 Fed.Appx. 817, 822 (6th Cir. 2007).

The first component of the analysis results in a determination Officer Dunkel had probable cause to stop the Hurston vehicle. The hour of the day in conjunction with the vehicle not staying within the marked lanes of travel prompted Officer Dunkel to stop the car. The second stop in like fashion was also predicated upon probable cause. Hurston's vehicle had an inoperable license tag light which is in violation of the Springboro Ordinance. Further, Hurston could not keep the vehicle within the marked lanes of travel, also a violation of the Springboro Ordinance.

Both stops of Hurston were made based upon Officer Dunkel's observations providing probable cause for each stop.

The second aspect of the inquiry results in a conclusion that the degree of intrusion was reasonably related in scope to the situation at hand.

Hurston is unable to provide any information as to the length of each stop. However, he concedes he was never taken to the police station, handcuffed nor told he was under arrest. (M. Hurston Depo., Pp. 38, 39) On the other hand, Officer Dunkel has estimated the length of each stop. The first stop lasted 7 - 8 minutes while the second stop was longer in duration due to the fact Mr. Hurston had a passenger for whom there was an outstanding warrant. As a consequence, it took longer to confirm information, etc. concerning Mr. Hurston's passenger before he was ultimately arrested. (Dunkel Affidavit)

In either case, Hurston was simply stopped, issued a citation and subsequently permitted to leave.

Under the circumstances, there is nothing to indicate the degree of intrusion in either stop was unreasonable.

Officer Dunkel's stops of Hurston were based upon probable cause and the degree of intrusion was not unreasonable and consequently there was no violation of Mr. Hurston's Fourth Amendment rights. Hurston's claims under his First Cause of Action must be dismissed.

**B. Officer Dunkel Is Entitled To Qualified Immunity.**

The analysis used to determine whether an officer is entitled to qualified immunity consists of either a 2-part test or 3-part test. *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008); *Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005). The applicability of qualified immunity begins with determining whether a constitutional right has been violated and whether that right was clearly established. *Dorsey, supra*. The Courts that employ the 3-part test expand the inquiry by determining whether the plaintiff has offered sufficient evidence to indicate that what the officer allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Bennett, supra*.

Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law". Hurston has the burden of demonstrating Officer Dunkel is not entitled to qualified immunity. *Dorsey, supra*, at 394, 395.

As set forth above, Officer Dunkel did not violate Mr. Hurston's Fourth Amendment rights thus there was no constitutional violation and the inquiry should end with that

determination. However, even if it was determined Officer Dunkel violated Hurston's Fourth Amendment rights, Dunkel nevertheless would be entitled to qualified immunity since his conduct under the circumstances was not objectively unreasonable.

For these reasons, Officer Dunkel is entitled to qualified immunity.

### C. Probable Cause Existed For The Citations Issued By Officer Dunkel To Hurston On August 27, 2005 And January 12, 2007.

The facts giving rise to the traffic stops of Hurston by Officer Dunkel on August 27, 2005 and January 12, 2007 were set forth *supra*. Just as probable cause defeats a claim for an alleged stop in violation of the Fourth Amendment, it also defeats a claim for malicious prosecution. As the Court recently recognized in *Wheeler v. Kentucky State Police Detective Kirkland*, 2008 WL 440287 (6th Cir. 2008):

> This court has recognized a § 1983 claim for malicious prosecution arising out of the Fourth Amendment, but the contours of such a claim remain uncertain. (Citations omitted) What is certain, however, is that such a claim fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute. *Id.* at 7.

Stated somewhat differently though embracing the same concept, the Court in *Abdul-Khaliq v. City of Newark*, 2008 WL 1848781 (6th Cir.), recognized:

> Because the district court correctly concluded that the officers had probable cause to arrest, Khaliq's claim for malicious prosecution necessarily fails. *Id.* at 4. *See also, Jolley v. Harvell*, 254 Fed.Appx. 483 (6th Cir. 2007).

Hurston's theory of malicious prosecution apparently stems from the fact Officer Dunkel issued him two citations. While probable cause clearly existed for Officer Dunkel to issue both citations, he did not participate in the decision as to whether the prosecution

-10-

should go forward on either of the citations. As Officer Dunkel's Affidavit makes clear, he learned both cases against Hurston were never prosecuted but were simply dismissed. He was never contacted by the Prosecutor nor anyone else concerning whether to proceed with the prosecution, his account of what occurred, or for that matter anything related to either citation he issued to Hurston. Absent a role in either making, influencing or participating in the decision to prosecute, he cannot be held liable for a claim of malicious prosecution. *Wheeler, supra*. *See also, Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002).

Where, as here, probable cause existed for the issuance of the citations to Hurston, there can be no claim of malicious prosecution against Officer Dunkel. In addition, since Dunkel had no role in determining whether to prosecute Hurston on these citations, the claim for malicious prosecution must fail for this reason as well.

**D.    Officer Dunkel Is Entitled To Qualified Immunity.**

For the reasons set forth earlier, Officer Dunkel is entitled to qualified immunity concerning Hurston's claim for malicious prosecution since his actions were not objectively unreasonable. *Dorsey v. Barber*, 517 F.3d 389 (6th Cir. 2008).

**E.    The City Of Springboro Was Not Deliberately Indifferent In The Training Of Its Officers.**

Hurston, in his Third Cause of Action, alleges the City of Springboro is liable for the conduct of its officers. The allegations are couched in terms that the City of Springboro had an official policy concerning the failure to train its officers that rose to the level of deliberate indifference. Hurston also apparently contends the City is vicariously liable on

-11-

the basis it ratified the alleged unlawful conduct of its officers. Each allegation is without merit and must be dismissed.

The fact Officer Dunkel did not violate any constitutional right of Hurston, is, in and of itself, fatal to Hurston's claim against the City. Absent a constitutional violation on the part of Officer Dunkel, there is no basis for liability against the City. *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007).

Notwithstanding the fact Officer Dunkel did not violate a constitutional right of Hurston, there is no basis for Hurston's claim against the City.

Hurston has the burden of alleging and establishing a direct causal link between a policy or custom of the City and the alleged constitutional deprivation. Further, Hurston must identify the custom or policy and connect the policy to the City and demonstrate the particular injury occurred because of the execution of that policy. *Powers v. County of Lorain, Ohio*, 2008 WL 162897 (6th Cir. 2008).

In the context of an alleged failure to train, the Court in *Currie v. Haywood County, Tennessee*, 234 Fed.Appx. 369 (6th Cir. 2007), discussed the elements of plaintiff's burden of prevailing on such a claim. Specifically:

> To successfully allege as much, Currie must establish that: 1) [Haywood's] training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of [Haywood's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.

* * *

> [a]llegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training. *Id.* at 372, 373.

Hurston concedes he knows nothing about the training the City provides to its officers. Further, he can't identify any specific aspect of the City's training which he deems deficient. (M. Hurston Depo., Pp. 80, 81) However, the Affidavits of Lt. Jonathan Wheeler and Officer Dunkel set forth the types of training the City provides to its officers and in particular the type of training which Officer Dunkel received.

There is no evidence before the Court the City's training of its officers can be deemed deliberately indifferent nor could there possibly be any connection between an alleged deficiency in the City's training and the alleged constitutional deprivation of Hurston.

For these reasons, Hurston's claims against the City cannot be sustained.

### F.    Hurston Has No Claim For A Violation Of His Substantive Due Process Rights.

Hurston, in his Fourth Cause of Action, claims the conduct of the Defendants violated his substantive due process rights. However, Hurston fails to recognize there is no basis for a claim of a violation of his substantive due process rights.

Hurston's claims assert alleged violations of his Fourth and Fourteenth Amendment rights. These claims stem from alleged traffic stops without probable cause and the institution of charges against him without probable cause. Since his claims arise under the protections afforded under the Fourth Amendment, the claims cannot be analyzed under substantive due process. As the Court in *George v. Michigan*, 63 Fed.Appx. 208 (6th Cir. 2003), recognized:

> If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *Id.* at 212.

Clearly, Hurston's claim his substantive due process rights were violated cannot be sustained his claims arise under the Fourth Amendment.

Notwithstanding the fact Hurston has not stated a claim for a violation of substantive due process, even if his claims were analyzed under such a standard, they would fail in that regard as well. In order to prevail on a substantive due process claim, Hurston must demonstrate the conduct of the Defendants "shocks the conscience". The Court in *Simon v. Cook*, 2008 WL 244504 (6th Cir. 2008), explained:

> To shock the conscience, conduct must have been "so brutal and offensive that it did not comport with traditional ideas of fair play and decency." *Id.* at 8.

There is nothing before the Court to indicate the conduct of Officer Dunkel "shocks the conscience" and, as a result, Hurston's claim of a violation of his substantive due process rights must fail.

**G. The City of Springboro Is Immune From Punitive Damages.**

Hurston seeks punitive damages from the Defendants. However, his claim for punitive damages against the City must fail in that the City enjoys absolute immunity from such claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The City is entitled to judgment in its favor on this claim.

## IV. CONCLUSION

Based on the foregoing, it is respectfully requested Defendants' Motion for Summary Judgment be granted in that there is no genuine issue as to any material fact and said moving parties are entitled to judgment as a matter of law.

/s/ Wilson G. Weisenfelder, Jr.
Wilson G. Weisenfelder, Jr. (0030179)
RENDIGS, FRY, KIELY & DENNIS, L.L.P.
One West Fourth Street, Suite 900
Cincinnati, OH 45202-3688
(513) 381-9292
(513) 381-9206 - Facsimile
E-mail: wgw@rendigs.com
Trial Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2008 , I electronically filed the foregoing Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> James E. Kolenich, Esq.
> 9435 Waterstone Blvd., #140
> Cincinnati, OH 45249
> Attorney for Plaintiff

/s/ Wilson G. Weisenfelder, Jr.
Wilson G. Weisenfelder, Jr.