UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **MIRACLE HURSTON** | : | Case No: 1:07-cv- 00449 |
| Plaintiff, | : | JUDGE BARRETT |
| v. | : | |
| **CITY OF SPRINGBORO, OH et al.** | : | |
| Defendants. | : | |

### PLAINTIFF'S BRIEF IN OPPOSITION

Now comes Plaintiff, Miracle Hurston, and responds to the Defendants Motion for Summary Judgment [DE 14] as follows:

A.  Probable Cause

The Defendant Officer Terry Dunkel has alleged that he had "probable cause" to stop Mr. Hurston's vehicle in 2005 and 2007. (see Defendant's Motion at pgs 5-9.) This assertion is based on Officer Dunkel's allegation that he observed Mr. Hurston weaving in 2005 and again in 2007 and that a plate light was out in 2007. (Dunkel deposition [DE 16] at p. 6 and p.12).

Mr. Hurston directly contradicts the allegation that he was weaving, had any sort of problem with his license plate light or that there was any legitimate reason whatsoever for Officer Dunkel to stop him either in 2005 or in 2007. (See attached Hurston Affidavit and attached Hurston deposition excerpts at depo pgs. 64-66. On depo p. 64 beginning at line 24 Mr. Hurston is discussing the 2007 incident as that stop involved the license plate

1

light.) Moreover the video of the 2007 traffic stop (manually filed by Plaintiff and housed with the Clerk as an attachment to DE 15) clearly shows that Officer Dunkel's version of events is simply not true. Clearly Plaintiff has made (at a minimum) sufficient showing as to material facts to defeat the defense motion for summary judgment as to the facts of what happened in 2005 and 2007.

The remainder of Section "A" of Defendant's Motion deals with the length of the traffics stops. As Plaintiff has not complained about the length of the stops but rather the existence of the stops at all, that issue is not relevant (except as to damages) and Plaintiff does not comment on it here.

B. Qualified Immunity

Defendant Dunkel next alleges (in Defense Motion section "B") that he enjoys qualified immunity in this matter. Defendant himself apparently doesn't take this argument too seriously since his discussion of it aside from boilerplate case citations consists of a single sentence that makes the bare assertion that Dunkel's conduct was "not objectively unreasonable." (Defense Motion at p.10.)

Plaintiff concurs with Defendants explanation of the law on qualified immunity. Plaintiff must show that a constitutional right has been violated, that it was clearly established and that the officers conduct was objectively unreasonable in light of the clearly established right. *Dorsey v. Barber* 517 F.3d 389 (6th Cir. 2008).

That Plaintiff has made a sufficient showing that a right was factually violated has been demonstrated above in section "A". That the right was clearly established Defendant has implicitly conceded by not discussing the issue in their Motion for summary judgment section "B". Moreover the law is clear that the 4th Amendment clearly does

apply to the allegations in this case. *Bennett v. City of Easpointe* 410 F. 3d 810 (6th Cir. 2005) quoting *California v. Hodari D.* 499 U.S. 621 (1991.) (case finding that 4th Amendment applies where there is 1) a show of authority and 2) submission to that authority which all parties agree occurred in this case.)

That Defendant Dunkel's actions were not objectively reasonable (that is Dunkel intentionally stopped Plaintiff when he knew he lacked any reasonable suspicion to do so and then filed charges against the Plaintiff that Dunkel knew to be false) is clear if Plaintiffs story is credited as it must be when considering the Defendants summary judgment motion. See *Bennett v. City of Eastpointe* 410 F. 3d 810 (6th Cir. 2005) and *Celotex Corp. v. Catrett* 477 U.S. 317 (1986) (cases holding that when facts and inferences are viewed in light most favorable to the non moving party any genuine issues of material fact will preclude summary judgment.)

C. Malicious Prosecution

Defendants Motion Section "C" deals with Plaintiff's malicious prosecution claim. Under a § 1983 analysis malicious prosecution requires at least 1) no probable cause to prosecute 2) that Defendant make, influence, or participate in the decision to prosecute and 3) that the prosecution terminate in favor of the § 1983 Plaintiff. Requirement #3 is at least implicitly required under the doctrine of *Heck v. Humphrey* 512 U.S. 477 (1994) (holding that where a Plaintiff is convicted of resisting arrest he cannot then bring an excessive force claim under § 1983 as that would implicitly undermine Plaintiff's conviction for resisting.). (see Defense Brief at pgs. 10-11). It follows that where a Plaintiff has been convicted of the charges he was prosecuted for a malicious prosecution claim cannot lie.

3

Here the Defendants re-allege their argument that probable cause did exist (based on Defendants assertions that this is so) and add that Dunkel did not sufficiently participate in the decision to prosecute the Plaintiff in either 2005 or 2007 as they were dismissed without his *a priori* knowledge. (see Defense Motion at pgs. 10-11.) Plaintiff has established above that no probable cause existed for either the 2005 or 2007 stops sufficiently to survive summary judgment above and relies on those arguments here.

Defendants assertion that he did not sufficiently participate in the decision to prosecute must also fail. Defendant Dunkel admits that he issued two citations to the Plaintiff (see defense motion at p.10) The case relied on by Defendants to establish that by issuing a citation Dunkel does not sufficiently participate in prosecution to give rise to a malicious prosecution claim does not, in fact, support that position. In *Skousen v. Brighton School District*, 305 F. 3d 520 (6th Cir. 2002) a Defendant state trooper was granted summary judgment because he had never issued any citation or otherwise filed a charge. Rather he had merely investigated a case and filed a report with his superiors. Here Defendant Dunkel did issue citations and thus formally initiated a prosecution of the Plaintiff.

Moreover the rule urged by the Defendant (that a policeman can never be sued for malicious prosecution because all he does is file charges not decide whether or not to prosecute them) would destroy the very existence of the cause of action. As only prosecutors make the actual decision whether or not to proceed with filed charges, and as prosecutors enjoy absolute immunity for such decisions *Cooper v. Parrish* 203 F.3d 937 (6th Cir. 2000), the cause of action could not exist under the theory implicitly advanced by defendant Dunkel. Since the cause of action clearly does exist, *Skousen*, supra, and the

4

parties agree that all charges against the Plaintiff were dismissed in 2005 and in 2007, the Defense argument is without merit and the Plaintiffs malicious prosecution claim must survive summary judgment.

D. Qualified Immunity Again

In Section "D" of the defense motion (p.11) Defendants again argue that Officer Dunkel enjoys qualified immunity, this time from the Plaintiff's malicious prosecution claim by baldly declaring that Dunkel's actions were not objectively unreasonable. When Plaintiff's allegations are credited for purposes of summary judgment analysis however, it is clear that Officer Dunkel's actions were not only objectively unreasonable but intentionally wrongful and malicious as well. Defendants assertion of qualified immunity as to the malicious prosecution count is without merit and Plaintiff's claim must be permitted to proceed.

E. The City of Springboro

In Section "E" of the Defense Motion (beginning on p.11) Defendants move for summary judgment as to the City of Springboro, OH. Defense asserts yet again that Officer Dunkel did not violate any right of the Plaintiff and urges the Court to decide the issue on that defense assertion alone. Defense further argues that the Plaintiff has failed to make a sufficient showing independent of what Dunkel did or didn't do to sustain a claim against the City.

Plaintiff has demonstrated above that he has made a sufficient showing to survive summary judgment that Officer Dunkel did in fact violate his 4th Amendment rights (see Section "A" above) and relies on that argument here.

As to the Defense assertion of a lack of evidence for the other elements of a failure to train or supervise claim the Defense motion is without merit. To successfully allege a failure to train or supervise claim a Plaintiff must show 1) the training or supervision was inadequate for the tasks performed; 2) the inadequacy was the result of the (City's) deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Municipal School District* 455 F. 3d 690 (6th Cir. 2006).

Plaintiff can show that the training or supervision was inadequate, that this inadequacy was the result of deliberate indifference, and that this inadequacy was sufficiently related to the Plaintiff's injury by means of his deposition of various Springboro police officers.

Lt. Jonathon Wheeler was deposed. Wheeler is a second in command (under the Chief of Police) at the Springboro Police Department. (Wheeler depo at p. 36). Wheeler is familiar with training given to Springboro officers (Wheeler depo at p. 7) He has been a policeman for seventeen years and a Springboro officer for fourteen years (Wheeler depo at pgs 3-4.) He was formerly assigned as a supervisor of patrol officers in Springboro (that is he was directly involved in their day to day supervision) (Wheeler depo at p 11.) Wheeler testified that there is ongoing, monthly training and that such training includes "traffic related issues." (Wheeler depo at p. 8) He further testified that the Springboro department uses the legal terms "probable cause" and "reasonable suspicion" interchangeably or at least when appropriate. (Wheeler depo at p. 8.)

That Wheeler, a 17 year police veteran and a person responsible for the training the Springboro Officers is afflicted with some confusion about the legal concepts

6

reasonable suspicion and probable cause is not an isolated defect on the Springboro force. Officer Thomas Faulkner, a three year police veteran (Faulkner depo at p. 3) was deposed and had apparently never heard the phrase "reasonable suspicion" before in his life (Faulkner depo pgs. 21-22). Indeed Faulkner contradicted Lt. Wheeler's assertion that "probable cause" and "reasonable suspicion" are used appropriately in Springboro by testifying that he is trained that probable cause is required for a traffic stop. (Faulkner depo p. 23.) This is, of course, not true as in Ohio a "reasonable, articulable suspicion" as distinct from actual probable cause may be sufficient to justify an investigatory stop. *State v. Robinette* 73 Ohio St. 3d 650 (1995) and in fact this particular legal concept dates at least from the time of *Terry v. Ohio* 392 U.S. 1 (1968).

Officer Nathan Anderkin also testified. Anderkin stated that he is trained only as a tactical Officer or other special training he himself requests. (Anderkin depo at p.7) Anderkin specifically denied there is any routine traffic training (Anderkin depo at p.10) and further stated that what traffic training he does receive is largely on his own initiative and not through the Police Department. (Anderkin depo at p. 10). Despite all this Anderkin is permitted to work as a traffic patrol officer (Anderkin depo at p.4) Again all of this contradicts the account given by Lt. Wheeler.

Finally, former City Prosecutor John Sharts was deposed. Mr. Sharts testified that the Springboro department has a "tendency to interact with younger drivers in crumbier looking cars" (Sharts depo at pgs. 8-9) and that he had to spend time avoiding "being had" by Springboro Officers in regard to tickets or citations they had issued.( Sharts depo at p.17.) Sharts specifically mentioned a Sgt. Hughes who "attempted to game everybody" as to traffic citations. Somehow this "game player" Sgt, Hughes who

7

"game(d) everybody" was promoted by Springboro Police to be a shift and squadron leader (Sharts depo at p. 18) and the same Sgt. Hughes was directly responsible for the training of defendant Officer Dunkel. (See Affidavit of Wheeler attached to DE 14) Sharts further testified that the treatment alleged by the Plaintiff in this case is "unusual" by which he meant indicative of some problem although he could not say whether the problem was with the police or with the plaintiff. (Sharts depo at pgs 21 and 26.)

Further, Lt. Wheeler testified that when the Plaintiff in this case called him to complain about Defendant Officer Dunkel that the totality of his investigation in to the complaint was to ask Dunkel if he had done anything wrong. (Wheeler depo at pgs. 14-15). Wheeler ignored the Plaintiffs complaint based solely on what Dunkel told him (see Wheeler dep at pgs. 13-14.)

That Wheeler did so is highly significant for two reasons. 1) it implies that Springboro Officers are not supervised at all as any story they choose to tell an inquiring boss will be taken at face value and 2) it implies that this is standard procedure in the Springboro Department since nothing in Wheeler's testimony indicated his "investigation" of the Dunkel Complaint was in any way a deviation from the norm.

Based on the foregoing Plaintiff has sufficient evidence of 1) a failure to train and/or supervise perpetrated by the City of Springboro (disagreement among all deponents as to what if any training is given on traffic issues as well as widespread ignorance of the basic traffic law concept of "reasonable suspicion" even among veterans of nearly two decades experience and Lt. Wheeler's so called investigation into a complaint from the Plaintiff about Dunkel which consisted of nothing more than asking Dunkel if he should be disciplined or not) 2) this failure was caused by deliberate

8

indifference (the existence of the aforementioned "tendency", the hiring and promotion of the "game" player Sgt. Hughes, Hughes directly trained and supervised defendant Dunkel, Wheeler's investigation being a sham, nobody in Springboro bothering to learn even basic traffic concepts in order to properly train the department etc.) and that these failures were sufficiently closely related to or actually did cause the Plaintiff's injuries here since a more properly trained and supervised department should not be, indeed could not be, out making up fairly tales regarding "weaving" and plate lights about innocent citizens.

Based on the above the Defense motion as to the City must fail.

F. Substantive Due Process

Plaintiff concedes, based on the authority cited by the Defense that a substantive due process claim will not lie in this case and therefore Plaintiff does not oppose the Defense motion as to this limited issue.

G. Punitive Damages against Springboro, OH

Plaintiff acknowledges that punitive damages are not available against Springboro, OH and does not oppose the defense motion as to this limited issue.

CONCLUSION

In considering a summary judgment motion all inferences are to be made in favor of the non-moving party. *Celotex Corp. v. Catrett* 477 U.S. 317 (1986.) When this is done it is clear that the Defense Motion is not well taken, in part, and must be overruled, in part, as listed and demonstrated above.

Respectfully Submitted,

9

                                                s/ James E. Kolenich
                                                _____
                                                JAMES E. KOLENICH (0077084)
                                                9435 Waterstone Blvd. #140
                                                Cincinnati, OH 45249
                                                (513) 444-2150
                                                (513) 444-2099 (Fax)
                                                jameseus@hotmail.com
                                                *Trial Attorney for the Plaintiff*

 

CERTIFICATE OF SERVICE

Filed with the Court's CM/ECF system on June 7, 2008.

                                                s/ James E. Kolenich
                                                _____
                                                J. E. Kolenich