```
             UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
             CASE NUMBER: 1:07-CV-00449
                   JUDGE BARRETT


MIRACLE HURSTON                        PLAINTIFF
    vs.
THE CITY OF SPRINGBORO, OHIO, ET AL.   DEFENDANTS

                   * * * * * * * *
DEPONENT:     MIRACLE HURSTON
DATE:         FEBRUARY 14, 2008
                   * * * * * * * *



Tina M. Barlow, CCR
Certified Court Reporter



                    B a r l o w
              Reporting & Video Services, LLC
                  620 Washington Street
                 Covington, Kentucky  41011
                      (859) 261-8440
```

---

```
                         INDEX
                                              Page
Cross-Examination by Mr. Weisenfelder            4



                 NO EXHIBITS WERE MARKED
```

---

Page 3

     The deposition of Miracle Hurston, taken for the purpose of discovery and/or use as evidence in the within action, pursuant to notice, heretofore taken at the office of Rendigs, Fry, Kiely & Dennis, LLP, One West Fourth Street, Suite 900, Cincinnati, Ohio, on February 14, 2008 at 9:00 a.m., upon oral examination, and to be used in accordance with the Ohio Rules of Federal Procedure.


                   * * * * * * * *
                     APPEARANCES

REPRESENTING THE PLAINTIFF:
JAMES E. KOLENICH, ESQ.



REPRESENTING THE DEFENDANTS:
WILSON G. WEISENFELDER, JR., ESQ.

                   * * * * * * * *

---

     MIRACLE HURSTON, called on behalf of the Defendants, after having been first duly sworn, w examined and deposed as follows:
                   CROSS-EXAMINATION
BY MR. WEISENFELDER:
     Q.   Would you state your name for the recor please.
     A.   Miracle Floyd Hurston.
     Q.   Mr. Hurston, we were introduced a momer ago.  For the record, my name is Wil Weisenfelder I represent the City of Springboro and Officer Dunkel in this lawsuit that has been filed on you behalf.  I'm going to take your deposition today. I'm going to ask you some questions about yoursel about the claims that you've made in your complai things of that nature.  If I ask you a question t you don't understand, tell me you don't understar it and I'll either rephrase it or have the court reporter read it back, okay?
     A.   Yes, sir.
     Q.   Also, when you're responding to one of questions, you have to do so out loud, orally, as opposed to an uh-huh or an huh-uh, or a nod of th head or a shrug of the shoulders, okay?
     A.   Yes, sir.

61

1 A. No.
2 Q. Anyone else with you on any other time
3 that you were stopped?
4 A. No.
5    MR. WEISENFELDER: Let's take about five
6 minutes.
7    (OFF THE RECORD)
8 BY MR. WEISENFELDER:
9 Q. Mr. Hurston, maybe we can speed this up a
10 little bit. I've reviewed your complaint and based
11 on what I had seen in the records, I want to make
12 clear that the allegations in your complaint —
13 you're not saying that any of the actions on the
14 part of any of the officers involved in any of the
15 stops or any of the issuing of citations was in any
16 way racially motivated; is that accurate?
17 A. I'm not complaining and suing for that,
18 but do I feel that way?
19 Q. Well, no —
20 A. There's a difference between what I feel
21 versus what I'm actually —
22 Q. Well, what I'm concerned about is what's
23 alleged in the complaint.
24 A. No. That's not — that's not alleging
25 anything nowhere.

Barlow Reporting & Video Services, LLC
(859) 261-8440

62

1 Q. So there's nothing in your complaint, and
2 there's nothing being construed from the allegations
3 in your complaint —
4 A. Huh-uh.
5 Q. — that any of these stops or citations
6 were racially motivated; is that true?
7 A. That's correct.
8 Q. That you're not alleging selective
9 enforcement in your complaint?
10 A. Not based on race.
11 Q. Well —
12 A. In the complaint.
13 Q. Nor racial profiling; is that true?
14 A. That's true.
15 Q. Okay. So, to the extent that any
16 allegation like that could be inferred, that would
17 be incorrect?
18 A. What do you mean? I don't know how to
19 answer that. Could be inferred? Because when you
20 infer —
21 Q. There's nothing that could be gleaned from
22 the allegations in your complaint that they attempt
23 to state a claim for racial profiling or selective
24 enforcement; is that accurate?
25 A. This is not a racial profiling claim. I

Barlow Reporting & Video Services, LLC
(859) 261-8440

63

1 can just say no to that.
2 Q. Okay. Now, you've alleged in your
3 complaint that it — I'm not certain what video —
4 have you reviewed the videos that were taken from
5 the scene?
6 A. No. There's multiple videos that I
7 haven't been able to see.
8 Q. Okay. And you have not reviewed them?
9 A. No. I reviewed the ones that I had to
10 actually end up going to court on. I seen those —
11 I reviewed those with the prosecutor. That's how I
12 know what's on them.
13 Q. And do you know what stop those videos
14 were from?
15 A. The one with Jessica, the BMW, the one
16 where Curtis was arrested and the one with Officer
17 Dunkel — I mean, not Dunkel but Officer —
18 Q. Anderkin?
19 A. — Anderkin, yes.
20 Q. The one for the speeding?
21 A. Yes.
22 Q. That you were convicted on?
23 A. Correct.
24 Q. Well, let's take the video involving the
25 BMW.

Barlow Reporting & Video Services, LLC
(859) 261-8440

64

1 A. Uh-huh.
2 Q. Do you understand?
3 A. Okay.
4 Q. I need a yes or a no, as opposed to
5 uh-huh. She can't take uh-huhs, okay?
6 A. Okay.
7 Q. Do you recall the video involving the BMW?
8 A. No. I just know it was dismissed.
9 Q. Okay. So you can't tell me, as you sit
10 here today, how the video contradicts the citation
11 that was issued?
12 A. I wasn't going left of center. It's been
13 a contradiction in — even all of them have been
14 consistently — consistently not showing what I was
15 cited for, any of them. Even my conviction did not
16 show me violating the law.
17 Q. So the BMW video shows that you weren't
18 going left of center?
19 A. I'm certain that it will show that, but I
20 can't recall that. That was in '05, so...
21 Q. And the one when Curtis was with you?
22 A. Yes.
23 Q. What does that video contradict?
24 A. Everything. I was given a license plate
25 light, I was given a left of center. I don't know

Barlow Reporting & Video Services, LLC
(859) 261-8440

65

1  if I was cited for something else, but, boy, all of
2  them were pretty — like, they're blatant, they're
3  obvious that I was pulled over for some other
4  reason.
5    Q.  And anything else that that video
6  contradicts?
7    A.  That's all — no, I mean, that's all that
8  it would need to contradict is what I was being —
9    Q.  Well, you named two. Were there other
10 things beyond that, that the video contradicts?
11   MR. KOLENICH:  If you don't remember, you
12 don't remember.
13   A.  Right. Yeah, I don't remember that.
14   Q.  You don't know. Okay. Any other videos
15 that you recall seeing that contradict any citation
16 that you were issued, or reason that you had been
17 stopped?
18   A.  Besides —
19   Q.  The BMW and Curtis.
20   A.  And the speeding.
21   Q.  Okay. Well, the speeding you were
22 convicted of.
23   A.  They — well, but they still contradict
24 each other.
25   Q.  Okay.

66

1    A.  It was a major contradiction in the vide
2  so...
3    Q.  Any others?
4    A.  Not that I can — not that I can
5  specifically — not that I can specifically recall
6  I don't recall looking at the — I don't even reca
7  what was on that video, but I do know that it was
8  dismissed. The prosecutor dismissed that it
9  happened because he said it was baloney.
10   Q.  As you sit here today, do you have an
11 explanation as to why you were stopped so many tim
12 by Springboro?
13   A.  Do I have my own opinion, is that what
14 you're —
15   Q.  Do you have a factual basis as to why yo
16 were stopped?
17   A.  A factual basis?
18   Q.  Correct.
19   A.  When you say factual, being me and being
20 minority is a factual basis, but probably from you
21 standpoint, from a legal standpoint, I don't know
22 I can describe it as factual basis. So those are
23 two things, different interpretations.
24   Q.  Well, a moment ago you told us you're no
25 alleging racial profiling or selective enforcement

67

1    A.  Right.
2    Q.  So —
3    A.  It's not a complaint, right.
4    Q.  So I'm asking you, if we move those out of
5  the mix, so to speak, do you have a — an
6  explanation, a factual explanation, as to why you've
7  been stopped?
8    A.  Maybe they're bored. They don't have —
9    Q.  Is that fact or is that —
10   A.  — nothing else to do. I don't know.
11   MR. KOLENICH:  You don't have to try to
12 supply an answer, if you don't know, you don't
13 know.
14   Q.  You don't know why you were stopped?
15   A.  No, I don't.
16   Q.  Did you ever tell any of the officers that
17 had stopped you that you were simply driving through
18 Springboro to see if you could get stopped again?
19   A.  No.
20   Q.  Never made that statement?
21   A.  No.
22   Q.  In your first cause of action in your
23 complaint, you're alleging that there wasn't any
24 suspicion or probable cause to detain you. You've
25 also alleged that the conduct of the officers is

68

1  willful, wanton or malicious. Do you know what th
2  means, willful, wanton or malicious?
3    A.  Yes. That they — that they wanted to d
4  something wrong. Do I think it was intentional; i
5  that what it's saying?
6    Q.  Well, willful, wanton or malicious. I
7  mean, these are the words that are used in your
8  complaint. What acts can you attribute to any of
9  the officers that were willful, wanton or maliciou
10   A.  I feel whenever you violate somebody's
11 rights as a citizen to drive and obey the law and
12 still be detained, is a willful and malicious act.
13   Q.  So are you saying that the mere fact tha
14 they stopped you, that that was willful, wanton or
15 malicious?
16   A.  Yes. Especially on a persistent basis,
17 yes.
18   Q.  Okay.
19   A.  And then on top of that, to give a
20 citation, something I think knowingly, unless the
21 training was improper, but knowingly that I hadn't
22 violated any law.
23   Q.  So other than the stop, that's what you'
24 claiming was willful, wanton or malicious; is that
25 right?