UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Miracle Hurston,

    Plaintiff,

    v.                                  Case No. 1:07cv449

City of Springboro, *et al.*,              Judge Michael R. Barrett

    Defendants.

## OPINION AND ORDER

This matter is before the court upon Defendants' Motion for Summary Judgment (Doc. 14) and the Response in Opposition (Doc. 20) and Reply (Doc. 22) thereto. Also before the Court is Plaintiff's Motion for Summary Judgment (Doc. 15) and Defendants' Response in Opposition (Doc. 18). Defendants have also filed a Motion to Strike the Affidavit of Miracle Hurston (Doc. 21). Plaintiff filed a Response in Opposition (Doc. 23), and Defendant filed a Reply (Doc. 24).

### I.    BACKGROUND

On August 27, 2005, at approximately 3:22 a.m., Officer Terry Dunkel stopped the vehicle Plaintiff Miracle Hurston was driving. (Doc. 14-4, Terry Dunkel Aff. ¶ 5) Officer Dunkel is employed by the City of Springboro Police Department. (Id. ¶ 1) Officer Dunkel claims that he stopped Hurston because he observed the vehicle weaving between lanes. (Id. ¶ 5) Dunkel explains that the vehicle was traveling in the left lane. (Id. ¶ 6) Dunkel explains further that as he followed the vehicle, the right side tires remained on the center line for approximately sixty to eighty feet before the vehicle drifted back to the left. (Id. ¶

6) Dunkel maintains that the vehicle drifted back to the center line two more times. (Id.) Dunkel issued a citation to Hurston for failing to drive within lanes or continuous lines. (Id. ¶ 9) Dunkel explains that Hurston was not asked to leave his vehicle or handcuffed. (Id. ¶ 10)

On January 12, 2007, Officer Dunkel again stopped Hurston. (Dunkel Aff. ¶ 15) Officer Dunkel was traveling westbound when he passed a vehicle traveling eastbound. (Id.) Officer Dunkel maintains that he observed in his rear-view mirror that the vehicle did not have a functional plate light. (Id.) Officer Dunkel explains that he turned around and began following the vehicle. (Id.) Officer Dunkel maintains that he observed the vehicle drift from the left lane where it was traveling into the right lane. (Id.) Officer Dunkel issued a citation to Hurston for failing to drive within lanes and for a non-functioning license plate light. (Id. ¶ 21) A video recording of the stop was provided to the Court. (Doc. 19) The video recording was made from the front of Dunkel's cruiser. The video is not conclusive as to the violations Dunkel maintains he observed. It is not clear whether Hurston's plate light was functioning or whether Hurston's vehicle traveled outside the lanes.[1]

The charges resulting from both of the stops were dismissed. (Miracle Hurston Depo. at 40) Hurston disputes that he crossed the center line or that his license plate light was not functioning. (Id. at 80; Miracle Hurston Aff. ¶ 7, 8)

In his Complaint, Hurston brings claims pursuant to 42 U.S.C. § 1983 for (1) detention without reasonable suspicion or probable cause in violation of the Fourth and

---

[1]Hurston contends that the video shows an illuminated plate. (Doc. 15) However, Defendants point out that the plate appears illuminated only when the lights of Officer Dunkel's cruiser are shining on the plate, which is made of reflective material. (Doc. 18, Exs. A, B)

Fourteenth Amendments;[2] (2) malicious prosecution; (3) failure to train; and (4) violation of substantive due process. In response to Defendants' Motion for Summary Judgment, Plaintiff concedes that his claim for substantive due process should be dismissed.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

### B. Motion to Strike

Defendants argue that this Court should strike the affidavit of Hurston because the

---

[2]Hurston's reliance on the Fourteenth Amendment is misplaced. It is the Fourth Amendment that establishes protections in the criminal justice system. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005). While prior to January 1994, the Sixth Circuit did analyze a malicious prosecution claim as accruing under the Fourteenth rather than the Fourth Amendment, in *Albright v. Oliver*, 510 U.S. 266 (1994) the Supreme Court held that there was no such substantive due process right. *Spurlock v. Satterfield*, 167 F.3d 995, 1006 & n.19 (6th Cir. 1999).

statements therein contradict his earlier deposition testimony. Specifically, Defendants point to the portion of Hurston's deposition testimony where Hurston testified that he could not state the number of times Officer Dunkel stopped him, or why Officer Dunkel issued him a citation. (Hurston Depo. at 38) Defendants argue that this testimony contradicts Hurston's affidavit, which was submitted in response to Defendants' Motion for Summary Judgment. The affidavit states, in relevant part:

> 2. Since my deposition I have reviewed with my attorney all the evidence we have been able to obtain through the discovery process.
>
> 3. I now know that it was Officer Terry Dunkel who stopped me on two separate occasions in Springboro.

(Doc. 20-2, Miracle Hurston Aff.)

Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Affidavits that do not satisfy the requirements of Rule 56(e) are subject to motions to strike. *See Reddy v. Good Samaritan Hosp. & Health Center*, 137 F.Supp.2d 948, 954 (S.D.Ohio 2000).

During his deposition, Hurston stated several times that he could not answer specific questions about the times Officer Dunkel stopped his vehicle without reviewing the videotapes. (Hurston Depo. at 34, 37) Hurston explained that he could not discern between the different traffic stops because there were so many occurrences. (Id. at 37)

The Court finds that Hurston's affidavit does not directly contradict his earlier deposition testimony. As Hurston explained both in his deposition and affidavit, he was confused about the names of the officers who stopped him. (Id.; Hurston Aff. ¶ 11) The

Court would also note that the first of the two traffic stops occurred in August of 2005, and Hurston's deposition did not take place until February 14, 2008.  While Hurston's failure to remember the name of Officer Dunkel may call into question his credibility, this is ultimately a question for a jury, and the Court finds it would be inappropriate at this time to strike his affidavit.  *Accord Phillips v. Tradesmen Intern., Inc.*, 2006 WL 2849779, *8 (S.D.Ohio Sept. 29, 2006) (unpublished), *citing See Briggs v. Potter*, 2006 WL 2641971, at *5 (6th Cir. Sept. 15, 2006) (unpublished) (reiterating that credibility determinations and the weighing of evidence are functions reserved for the jury and holding that a district court erred in striking portions of an affidavit that allegedly contradicted the affiant's earlier deposition testimony where the district court impermissibly weighed the credibility of the affiant's statements).  Therefore, the Court DENIES Defendants' Motion to Strike the Affidavit of Miracle Hurston.

> **C.** <u>**Section 1983**</u>

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere.  *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985).  Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights.  *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001), *citing Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) *and United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir.1992).  There is no dispute that Defendants' acts constituted state action.  However, Defendants argue that they did not deprive Hurston of any constitutional rights, and Officer Dunkel is entitled to qualified immunity.

**D. Qualified immunity**

The doctrine of qualified immunity protects government officials acting in their official capacities from damages if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no genuine issues of material fact exist as to whether the public official committed acts that would violate a clearly established constitutional right, summary judgment may be proper. *See Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991) (finding that summary judgment was inappropriate on the issue of qualified immunity when two accounts of an arrest incident differed in all factual respects).

While the defendant bears the burden of pleading the defense of qualified immunity, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Miller v. Administrative Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006), *citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

Hurston alleges two constitutional violations by Officer Dunkel: (1) conducting a traffic stop without reasonable suspicion or probable cause; and (2) malicious prosecution.

**1. Unlawful traffic stop**

The Fourth Amendment to the United States Constitution protects "[t]he right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV.  A temporary detention of individuals by police during a traffic stop, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 810 (1996).

The Sixth Circuit has recently addressed the issue of whether an officer must have probable cause or merely reasonable suspicion that a traffic law was being violated before executing a traffic stop.  *U.S. v. Simpson*, 520 F.3d 531, 538 (6th Cir. 2008) ("Our circuit's case law on this issue has not been entirely clear, at least with regard to traffic violations.")  The court concluded that if there is an ongoing traffic violation, the officer must only have a reasonable suspicion there is a violation.  *Id.* at 541.

Hurston was stopped for both an ongoing violation–the non-functioning license plate light–and a completed violation–failing to drive within the lanes.  However, the Court finds under either the probable cause standard or the reasonable suspicion standard, there are genuine issues of material fact.  While Defendants contend Officer Dunkel observed Hurston travel across the center line, Hurston denies that his car weaved.  Where an officer relies on contested issues of fact regarding whether a traffic violation occurred, summary judgment is not appropriate.  *Bennett v. City of Eastpointe*, 410 F.3d 810, 828 (6th Cir. 2005) (explaining that the officer cannot simply asserted that traffic violations occurred and therefore the stop was justified).

Similarly, Defendants contend that Hurston's license plate light was not functioning, and therefore it was reasonable for Officer Dunkel to stop Hurston's vehicle.  While both sides argue that the videotape of the stop demonstrates that the light was or was not

functioning, the Court finds that this evidence is not conclusive one way or the other. Therefore, the Court concludes that Hurston is not entitled to summary judgment on this claim, and his Motion for Summary Judgment is therefore DENIED. However, considering the allegations in a light most favorable to Hurston, the Court finds that Hurston has shown a violation of the Fourth Amendment.

While the Sixth Circuit has only recently clarified whether probable cause or reasonable suspicion is required for a traffic stop, the Court finds that as of 2005 when Officer Dunkel first stopped Hurston, it was clearly established within the Sixth Circuit that either one or the other was required. *See United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (invalidating a traffic stop based on a lack of probable cause); *Weaver v. Shadoan*, 340 F.3d 398, 407-408 (6th Cir. 2003) (upholding traffic stop based on the officer's reasonable suspicion). Accordingly, Officer Dunkel is not entitled to qualified immunity, and Defendants' Motion for Summary Judgment on Hurston's Fourth Amendment claim is DENIED.

### 2. Malicious prosecution

The Sixth Circuit has recognized that a section 1983 claim for malicious prosecution arises under the Fourth Amendment, but the contours of such a claim remain uncertain. *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). "What is certain, however, is that such a claim fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." *Id.* The Sixth Circuit has recently reiterated that "a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful." *Kinkus v. Village of Yorkville, Ohio*, 2008 WL

3820555, *3 (6th Cir. Aug. 13, 2008) (unpublished); see also *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) (explaining that the Sixth Circuit has recognized that a malicious prosecution claim under § 1983 cannot be maintained against police officers unless there is evidence that the officers supplied false information to the prosecutor or to the court in order to establish probable cause). The Sixth Circuit has explained that although it "has yet to resolve the elements of a federal malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, 'that there was no probable cause to justify [his] arrest and prosecution.' " *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003), *quoting Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001).

The Court has found that there is a genuine issue of material fact as to whether Officer Dunkel had probable cause or a reasonable suspicion to support the traffic stop of Hurston's vehicle. If Officer Dunkel did not have probable cause or reasonable suspicion for the stop, he presented false information which was used in the prosecution of Hurston. As such, Hurston can maintain a claim for malicious prosecution against Dunkel under the Fourth Amendment.

Furthermore, the Sixth Circuit has found that "a reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999). Accordingly, Officer Dunkel is not entitled to qualified immunity on Hurston's malicious prosecution claim, and Defendants' Motion for Summary Judgment on Hurston's malicious prosecution claim is DENIED.

### E. Failure to train

Hurston also brings a claim under 42 U.S.C. § 1983 against the City of Springboro. For section 1983 liability to attach to a municipality, a plaintiff must offer proof of a wrongful or injurious policy or custom on the part of the city and a causal link between the policy or custom and her constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385-86 (1989). A municipality cannot be sued on a *respondeat superior* basis. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). The municipality can only be liable if its policy or custom played a part in the alleged violation. *Berry v. Detroit*, 25 F.3d 1342, 1345 (6th Cir.), *cert. denied*, 115 S. Ct. 902 (1994). Hurston alleges that the City failed to adequately train or supervise its police officers.

The Supreme Court has held that "the inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *Id.*, *citing*, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 397 (1997). A showing of simple or even heightened negligence will not suffice. *Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir.1997).

As evidence that the City was deliberately indifferent, Hurston points to the deposition testimony of two officers which showed some confusion on their part regarding the legal concepts of reasonable suspicion and probable cause. Given the current state of the caselaw within the Sixth Circuit on this issue, the Court finds that the officer's

testimony cannot support a finding of deliberate indifference.

Hurston also points to the contradictory deposition testimony of two officers regarding the frequency of training they received on the topic of traffic violations. The Court finds that this evidence is insufficient to support a finding of deliderate indifference. Whether the training was the best and most comprehensive available or whether the injury could have been prevented by more or better training has no bearing on a plaintiffs' failure to train claim. *Lewis v. City of Irvine, Kentucky*, 899 F.2d 451, 45 (6th Cir. 1990), *citing City of Canton*, 489 U.S. 390-91.

Finally, Hurston points to portions of the deposition testimony of John Sharts, who was a part-time prosecutor for the City during the time of the incidents in question. Hurston reads Sharts' testimony as providing evidence that the Springboro police officers targeted young drivers in older cars, which resulted in an unusual number of traffic stops. Even if such a practice existed, the Court finds that this alone is insufficient to establish a failure to train on the part of the City. "Deliberate indifference . . . does not mean a collection of sloppy, or even reckless oversights, it means evidence showing an obvious, deliberate indifference. . .." *Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 508 (6th Cir. 1996).

Hurston also maintains that Lieutenant Wheeler, who is second in command in the police department, failed to adequately investigate Hurston's complaints about Officer Dunkel. The Sixth Circuit has held that a failure to investigate complaints or discipline officers can give rise to § 1983 liability. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir.1989), *cert. denied*, 495 U.S. 932 (1990); *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir.1985), *cert. denied*, 480 U.S. 916 (1987); *see also Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990). The theory underlying these cases is that the municipality's

failure to investigate or discipline amounts to a "ratification" of the officer's conduct. *Dyer v. Casey*, 1995 WL 712765, *2 (6th Cir. 1995). In the failure to discipline context, the deliberate indifference standards applies. *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994).

Hurston has not pointed to any other complaints which went without investigation other than his own. The Sixth Circuit has held that absent evidence of a pattern or practice of failure to investigate, a plaintiff cannot maintain a claim of failure to investigate. *Thomas v. City of Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005) (explaining that unlike the plaintiffs in *Leach*, the plaintiffs failed to show several separate instances of the alleged rights violation). Accordingly, Defendants' Motion for Summary Judgment on Hurston's claim of failure to train or investigate is GRANTED.

### III.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. 14) ) is **DENIED in PART and GRANTED in PART**;

    a. Defendants' Motion is DENIED to the extent that Officer Dunkel is not entitled to qualified immunity on Hurston's claim for unlawful traffic stop and malicous prosecution in violation of the Fourth Amendment;

    b. Defendants' Motion is GRANTED to the extent that the City is entitled to summary judgment on Hurston's claim of failure to train or investigate;

2. Plaintiff's Motion for Summary Judgment (Doc. 15) ) is **DENIED**; and

3. Defendants' Motion to Strike the Affidavit of Miracle Hurston (Doc. 21) is **DENIED**.

   **IT IS SO ORDERED.**

   　　　　　　　　　　　　　　　　　　　 */s/ Michael R. Barrett*　　　　　
   　　　　　　　　　　　　　　　　　　　Michael R. Barrett, Judge
   　　　　　　　　　　　　　　　　　　　United States District Court